UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALDARESS CARTER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 2:15-cv-555 (RCL) |
| | ) |
| THE CITY OF MONTGOMERY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case is one of several cases concerning the treatment of indigent persons in various Alabama cities. In this particular case, plaintiffs maintain that the City of Montgomery violated their rights by denying them due process and creating debtor's prisons, where plaintiffs were made to "sit out" the fines and fees they could not afford to pay. This was done, according to plaintiffs, without due process or indigency determinations. Plaintiffs now seek to file suit on behalf of a class against the City; a private company that ran the City's probation services, Judicial Correctional Services (JCS)[1] and other related corporate entities; and Branch Kloess, an attorney hired by Montgomery to represent indigent defendants.

This case involves facts and legal arguments incredibly similar to or identical to those made before this Court in *McCullough v. City of Montgomery*, 2:15-cv-463. For the sake of brevity, the Court will not repeat its analysis here other than as necessary. Accordingly, this opinion should

---

[1] The Court notes that the name of this entity differs from brief to brief. The Complaint in this case lists a "Judicial Correctional Services." In *McCullough* the Complaint identifies the same company as "Judicial Correction Services." Additionally, the dockets in *McCullough* identify the party as "Judicial Corrections Services." Additionally, the plaintiffs identify several corporate entities and refer to them collectively as JCS. The Court will take the same approach, only distinguishing between them as necessary.

1

be read in conjunction with the opinion filed in that case as well as the other, similar, cases before this Court.

Defendants filed motions to dismiss for failure to state a claim. For the reasons specified both in the related opinions and herein, the Court GRANTS in part and DENIES in part defendants' motions to dismiss.

### I.     Background

As in the other cases, plaintiffs allege that the City of Montgomery had policies and practices designed to increase revenue at the expense of indigents. Plaintiffs maintain that people were arrested and placed on JCS probation, where they had to pay monthly fees in addition to the fines levied against them. Those who did not pay were subject to arrest without an indigency determination. Those individuals would sit in jail to pay off their debts with the "option" of working off their debt at a rate of $25/day of labor.

The facts in this case overlap significantly with *McCullough*, so this section will only address the pertinent unique allegations. Chief among them is that Branch Kloess, the attorney hired to defend indigents, "fully participated" in the City's policies, Am. Comp. ¶ 19, ECF No. 18, and did not inquire into ability to pay, fill out hardship forms, or even maintain files on his clients. *Id.* at ¶ 22. Indeed, the public defenders, including Kloess, allegedly told their clients to "pay or stay," that is, pay fines or stay incarcerated, as these defenders are funded out of the costs and fees levied against those defendants. *Id.* at ¶ 23-24.

With respect to JCS, plaintiffs also allege that though a private company, JCS used a room inside the city building, issued badges to JCS employees, and sat in the courtroom near the judge and advised the judge. *Id.* at ¶ 46. Plaintiffs thus maintain that as JCS's actions were interwoven with City policies, they are liable for a number of constitutional violations.

Additionally, plaintiffs allege that City policy allowed for the City itself to issue and execute warrants. *Id.* at ¶ 48.

## II.     Counts and Issues in this Case

The Complaint contains the following counts:

Count one, against the City and Kloess is for denial of due process. Count two against JCS is for denial of due process. Count three, against the City, is for violations of the Fourth Amendment. Count four, against JCS, is for violations of the Fourth Amendment. Count five, against the City, is for violations of the Sixth Amendment. Count six is against JCS for violations of the Sixth Amendment. Count seven is against the City for violations of the Eighth Amendment. Count eight is against JCS for violations of the Eighth Amendment. Count nine is against the City for denial of equal protection. Count ten is against JCS for denial of due process. Counts eleven through fourteen are RICO claims against JCS. Count fifteen is for declaratory and injunctive relief.

The Court has already addressed due process, the Fourth Amendment, the Sixth Amendment, the Eighth Amendment, and RICO in *McCullough*, and will not repeat its analysis here. The Court has also addressed equal protection in *McCullough*, but the arguments and basis for the count presented in this case appear to be completely distinct from those presented there. Accordingly, the Court will only address the following counts and issues in full: 1) JCS arguments not raised in *McCullough*, including the relationship between JCS and the various other identified corporate entities; 2) the equal protection counts; and 3) the count against Kloess.

### III. Legal Standard for Motions to Dismiss

A motion to dismiss is appropriate when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a failure occurs when the complaint is so factually deficient that the plaintiff's claim for relief is not plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though facts in a complaint need not be detailed, Rule 8 "demands more than an unadorned, the-defendant-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual statements as true when deciding a Rule 12(b)(6) motion to dismiss. *Id.* at 678. However, conclusory legal allegations devoid of any factual support do not enjoy the same presumption of truth. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This is not a high bar however, as plaintiffs need only plead facts sufficient to "nudge[] their claims across the line from conceivable to plausible." *Id.* at 547.

### IV. Analysis of Pending Issues

The Court is aware of the recent memorandum opinion issued in *Ray v. Judicial Corrections Services Inc.*, 2:12-cv-02819, in the Northern District of Alabama. In that case, summary judgment was granted for the defendants in a case with a number of very similar claims. While the Court looks at all relevant law, *Ray* is neither binding nor particularly applicable at this stage of the proceedings. The court in *Ray* made its summary judgment determination after reviewing specific facts about the JCS contract with the city in question, Childersburg. Before this Court are motions to dismiss, which are governed by a different legal standard. Additionally, the parties have not yet conducted discovery.

1.  **Equal Protection**

Where plaintiffs in *McCullough* discuss equal protection as associated with their claim that minority residents of the city were being targeted, the equal protection count in this case is premised wholly upon indigency.  Am. Comp. ¶¶ 283-294.

In *McCullough* this Court wrote that it "recognizes that prior Supreme Court precedent has spoken in the language of both due process and equal protection" when addressing indigency. *McCullough v. City of Montgomery*, 2:15-cv-463, Mem. Op. n. 1.  Here, the equal protection count appears to do the same, overlapping significantly with plaintiffs' due process counts.  Thus, to the extent that plaintiffs' count is intertwined with due process, they have stated a claim for the reasons specified in the due process section of *McCullough*.

However, the Court also notes that plaintiffs use language that could be interpreted to attack all levying of surcharges or fees related to payment plans.  The Court has addressed a similar issue in *Rudolph v. City of Montgomery*, 2:16-cv-0057, Mem. Op. 14-16, and the same reasoning applies here.  It is not the case that all fees that affect indigents are a violation of equal protection.  For example, in one paragraph plaintiffs write: "[t]he policy at Montgomery was not uniform with the procedures established by the Alabama Administrative Office of Courts because it added fees only to 'offenders' who could not pay immediately and created its own 'rules' for penalizing individuals who could not pay as directed."  Am. Comp. ¶ 196.  The Court sees no legal basis to believe that late fees or routine processing fees are violations of equal protection, though their impact may be most visible to those without the means to pay.  For example, if there is a processing fee of $1 each time someone pays with a credit card, those on payment plans may end up paying more (a $1 fee each time they make a payment) than those who had the means to pay in a single transaction.  The

Court sees no precedent nor basis for holding that such routine fees would be violations of equal protection however.

Thus to the degree this Count seeks to invalidate any or all fees associated with probation or payment plans as a matter of course, the Court sees no basis for such a claim. However, given the broader context of this count and the Supreme Court's language in *Bearden v. Georgia*, 461 U.S. 660, 664 (1983), plaintiffs have stated a claim.

**2. JCS**

While many of the arguments made by JCS are the same or very similar to the arguments made in *McCullough*, some of the arguments are sufficiently distinct that they are addressed below.

a. The Motion to Dismiss by CHC Companies

Defendant CHC Companies, Inc. filed a motion [37] to dismiss arguing that the complaint simply alleges that CHC Companies, Inc. (CHCC) wholly owns JCS or Correctional Healthcare Companies, Inc. The amended complaint, however, does not argue that CHCC is an alter ego of the other defendants nor, according to the motion to dismiss, are there any allegations that would allow the Court to reach CHCC's separate corporate structure.

This case is one of many similar cases being litigated in Alabama. Plaintiffs explain that discovery in those cases has revealed that JCS merged with CHCC in 2011. Moreover, CHCC entered into a "management services agreement" with Correctional Healthcare Companies, Inc. that made employees of JCS also employees of CHCC and Correctional Healthcare Companies, Inc. Pls.' Response Mot. Dismiss 1-2, ECF No. 45.

In light of these facts, Judge Proctor allowed the plaintiffs in *Ray* to amend their complaint to add CHCC. CHCC appears to have made very similar arguments both in *Ray* and this case in

support of their motions to dismiss.  *Compare Ray v. Judicial Corrections Services Inc.*, 2:12-cv-02819, Opp'n. Pls.' Mot. File Am. Comp., ECF No. 229, *with* CHC Companies, Inc. Mot. Dismiss, ECF No. 37.  Given the overlapping facts in this issue, where the cases are dealing with the same corporate entities and same factual relationship, the facts and arguments presented in *Ray* are applicable here.  While there are important distinctions between the cases, including the fact that the allegations relate to different cities, there is no indication that the corporate structure or JCS personnel are distinctly situated in this case as compared to *Ray*.

Thus, taken as true for the purposes of this motion, plaintiffs in this case have stated a claim against CHCC.  They have noted that CHCC directed JCS's operations and that nominal JCS employees identified themselves as employees of CHCC.  Regardless of the precise employment relationship any individual employees may have had with JCS or CHCC, plaintiffs' claims are sufficient at this point in the proceedings, as they are alleging that JCS employees are also employees of CHCC, which in fact controls JCS.

        b.  Other Arguments Advanced by JCS

JCS's motion to dismiss repeats the same, or similar, arguments advanced in *McCullough*.  The same reasoning articulated there applies equally here.  JCS's arguments center on their not being responsible for various actions undertaken by other actors.  However, as in *McCullough*, plaintiffs maintain that the actions of the various defendants were "inextricably interwoven."  Am. Comp. ¶ 33.  The precise nature of the relationship between the defendants or the role—or lack thereof—of JCS in any particular activity is likely to be relevant at later stages of this litigation.  However, given the nature of the complaint and the claims in this case, JCS's arguments about its limited role or activities are not persuasive.

### 3. Due Process Claim Against Kloess

Kloess, identified as the public defender for the City of Montgomery, filed a motion [34] to dismiss. Kloess is identified as a defendant only for count one, alleged violations of due process. Kloess argues that he did not represent Carter, was not involved with JCS, and played no role in many of the facts alleged in the complaint. He further argues that he was not a state actor who can be liable under 42 U.S.C. § 1983. In the alternative, he argues that he is immune from liability due to the doctrine of qualified immunity.

Given that this is a motion to dismiss, the Court takes the allegations in the complaint as true for the purposes of determining if a claim has been stated. In this case, plaintiffs argue that Kloess was an active participant in the City's "pay or stay" program that gave indigent defendants the option of paying fines they could not afford or remaining incarcerated. Pls.' Resp. Kloess' Mot. Dismiss 3, ECF No. 39. The complaint further alleges that Kloess filed a notice of appearance in Carter's case but did not introduce himself to Carter or speak on his behalf during the proceeding. Am. Comp. ¶¶ 89-98. According to plaintiffs, this was part of a widespread practice, as the "public defender" was funded through the fines that were levied against Carter and others. *Id.* at ¶ 145 ("[B]oth the City and the 'public defender'. . . are enriched by avoiding the constitutional due process requirements and demanding money from the poor.").

The Court also finds the reasoning in *Powers v. Hamilton Cty. Pub. Def. Comm'n*, both in the district court's opinion and in the Sixth Circuit's opinion, to be persuasive. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). There, the court held that public defenders could be liable under § 1983 for constitutional violations. Indeed, the facts in question were strikingly similar to those presented here as they concerned the liability of a public defender who failed to move for an indigency hearing. Kloess argues that the "court in *Powers* was wrong

8

and that the case is not precedent," Pls.' Resp. Kloess' Mot. Dismiss 7, and that *Polk County v. Dodson*, 454 U.S. 312 (1981), "essentially overrules" *Powers*. *Id.*

Kloess is clearly correct that *Powers* is not binding. However, how exactly *Polk*, decided in 1981, overrules *Powers* is much less clear.[2] *See also Hamilton Cty. Pub. Def. Comm'n v. Powers*, 555 U.S. 813 (2008) (denying certiorari). The Court sees no reason to diverge from the district or circuit court on this issue.

With regards to Kloess' argument on qualified immunity, plaintiffs have argued that dismissal is not proper at this stage as more facts are needed to conduct a proper functional analysis. It appears Kloess did not file a reply brief. Kloess spends two paragraphs on qualified immunity, both of which are conclusory. Kloess' Mot. Dismiss 8-9. He states that he is a lawyer who exercises discretion and therefore "is entitled to qualified immunity." *Id.* He also states that plaintiffs do not allege "any intentional acts were done by Kloess." As noted above, this is not the case—plaintiffs do allege Kloess acted intentionally. Given that the Court is not in a position to analyze the scope of Kloess' employment, the dearth of substantive arguments regarding qualified immunity made thus far, and based on the allegations in this case, the arguments made in the briefs, and the motions hearing held in August, 2016, the Court agrees with plaintiffs that in this case the question of qualified immunity would be more appropriate at a later stage of the proceeding.

Accordingly, the complaint does state a claim against Kloess for violations of due process.

---

[2] The Court notes that Kloess writes "*Polk County v. Dodson*, 454 U.S. 312, 127 S.Ct. 1955, 2007 [sic] essentially overrules *Powers*." Pls.' Resp. Kloess' Mot. Dismiss 7. It is not clear if this was inadvertent but improper bluebooking on Kloess' part, or if Kloess was intentionally attempting to create a typographical error ending in "2007" to grant at least temporal logic to the notion that *Polk* could have overruled *Powers*. Regardless, 127 S. Ct. 1955 is the citation for *Bell Atlantic Corp. v. Twombly*—not *Polk*—and it does not continue onto page 2007. 127 S. Ct. 2007 is a page in *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007) which is largely the introduction to a concurrence by Justices Scalia and Thomas in a case brought under the Individuals with Disabilities Education Act.

### V.      Conclusion

Counts One and Two, regarding Denial of Due Process, state a claim for the reasons articulated above, in plaintiffs' briefs, and in the previously referenced cases.

Counts Three and Four, concerning violations of the Fourth Amendment, state a claim for the reasons stated in plaintiffs' briefs and the referenced cases, particularly the discussion of Count Three in the memorandum opinion issued by this Court in *McCullough v. City of Montgomery*, 2:15-cv-463.

Counts Five and Six, alleging violations of the Sixth Amendment, state a claim for the reasons stated in plaintiffs' briefs and in the previously referenced cases.

Counts Seven and Eight, concerning the Eighth Amendment, also state a claim. Though the wording in this complaint and *McCullough* do not line up precisely, both address the issue of the Eighth Amendment being violated by use of bail systems that do not take into account the defendant's ability to pay. While *McCullough*'s Eighth Amendment claim focuses on the fixed-sum system and *Carter*'s places an increased emphasis on the resulting incarceration when the fixed bail is not paid, the underlying law and logic is the same.

Counts Nine and Ten concern Equal Protection and state a claim for the reasons stated above.

Counts Eleven through Fourteen allege RICO violations.  Plaintiffs do not state a claim in these counts for the reasons specified in defendant's briefs and in the previously referenced cases.

Count Fifteen concerns Carter's request for relief.  Carter states a claim for declaratory or injunctive relief for the same reasons articulated in *McCullough*.  Defendants appear to focus on changes to municipal policy, but as explained in the motions hearing, Montgomery's current policy is both unclear and subject to change.  Moreover, the City did not accept liability in *Mitchell*, and

the Court understands Count Fifteen as seeking to enjoin City action. The Court also notes that this count is tied to a separate motion for summary judgment seeking to declare the contract between the City and JCS void. For the purposes of the motion to dismiss, plaintiffs have stated a claim. However, the Court notes that it reserves judgment on the pending motion [71] for partial summary judgment along with subsequently filed motions to strike [75, 76].

    A separate order shall issue on this date.

_____<br>
Royce C. Lamberth<br>
United States District Judge

Date: 3/10/17