UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Aldaress Carter, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No: 2:15-cv-555 (RCL) |
| | ) |
| THE CITY OF MONTGOMERY, ALABAMA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Despite this Court's ruling substantially denying the City of Montgomery's (the "City") fully-briefed and argued motion to dismiss, Order, ECF No. 98, the City seeks a second bite at the apple. The City moves for judgment on the pleadings, again asking this Court to dismiss all of Mr. Carter's claims against it. *See* Mot. J. Pleadings, ECF No. 200. In support of this *de facto* motion for reconsideration, the Court relies principally on *McCullough v. Finley* ("*McCullough II*"), an Eleventh Circuit opinion evaluating a distinct issue in a separate, albeit admittedly related, case involving different parties and a different complaint.[1] *See* 907 F.3d 1324 (11th Cir. 2018). Specifically, the City argues that "the Eleventh Circuit has now definitively rejected" this Court's ruling "that it could be found that a City policy was the moving force behind the alleged

---

[1] The City also attempts to gain traction from *Thurman v. Judicial Corr. Servs., Inc*, No. 17-14450, 2019 WL 157547 (11th Cir. Jan. 10, 2019). In *Thurman*, the Circuit held that the *Rooker-Feldman* doctrine barred a claim by a plaintiff seeking return of fees paid to JCS pursuant to a probation order that was unsigned. *Id.* at *1–4. There, the Circuit stated it could not even "peer into Alabama law to determine whether an order must be signed because the *Rooker-Feldman* doctrine bars federal courts from adjudicating the validity of state court orders." *Id.* at *3. Mr. Carter's Section 1983 claims do not challenge the merits of the Municipal Court's decisions nor the bases on which those judgments were reached. These claims challenge only the post-judgment probationary program. *See Ray v. Judicial Corr. Servs., Inc.*, No. 2:12-cv-2819-RDP, 2013 WL 55428395, at *11. *Thurman* does not bear on those claims and does not necessitate dismissal of the City entirely.

1

constitutional wrongs[.]" Mot. J. Pleadings 8–9, ECF No. 200. For the reasons stated herein, the Court disagrees. The City's motion will be **DENIED**.

At this time, the Court also considers the City's Motion to Dismiss Counts Eleven (money-had-and-received) and Count Thirteen (false imprisonment). *See* Mot. Dismiss, ECF No. 148. These causes of action were added to the Mr. Carter's complaint after the city's initial motion to dismiss. *See* Order, ECF No. 143. For the reasons stated herein, that motion will be **GRANTED** and those counts will be **DISMISSED**.

I.  **The City's Motion for Judgment on the Pleadings [ECF No. 200]**

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). In determining whether a party is entitled to judgment on the pleadings, the Court accepts as true all material facts alleged in the non-moving party's pleading and views those facts in the light most favorable to the non-moving party. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Setting aside the state law claims discussed in Part II of this opinion, nearly all of Mr. Carter's remaining claims against the City seek relief under 42 U.S.C. § 1983 for alleged constitutional violations related to the probation program run within the City. *See* Second Am. & Restated Compl. Counts 1, 3, 5, 7, 9, ECF No. 145.

Section 1983 allows persons to sue municipalities acting under the color of state law for violations of federal law. *Hill v. Cundiff*, 797 F.3d 948, 976 (11th Cir. 2015). Under 1983, "municipal liability is limited to action for which the municipality is actually responsible."

2

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). "A municipality therefore may be held liable 'only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law.'" *Hill*, 797 F.3d at 977 (quoting *Denno v. Sch.Bd. of Volusia Cty., Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000)). The municipality must be shown to have "authority and responsibility over the governmental function in issue[,]" *Grech v. Clayton Cty.*, 335 F.3d 1326, 1330 (11th Cir. 2006), and the policy or custom must be the "moving force" behind the alleged constitutional torts. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Here, the City argues that the Eleventh Circuit's opinion in *McCullough II* forecloses a finding that the City had authority and responsibility over Judicial Corrections Services, Inc.'s ("JCS") actions and that any policy by the City was the moving force behind the alleged constitutional violations.

*McCullough et al. v. The City of Montgomery et al.* is another case pending before this Court arising from the probation system operated by JCS in the City. 2:15-cv-463-RCL ("*McCullough I*"). Although the underlying subject matter between that case and the present action is the same, the complaints are different, and the *McCullough* plaintiffs made claims against a number of persons not in this action, such as the City's chief of police, the former chief of police, the presiding judge and the former presiding judge of the City's Municipal Court, and the mayor. *See id.* On the same day that the Court issued its order and opinion on the motions to dismiss in this case, the Court issued an order and opinion in *McCullough I*. *See* 2:15-cv-463-RCL, 2017 WL 956362 (M.D. Ala. Mar. 10, 2017). In that opinion, the Court held, *inter alia*, that neither the presiding judge nor the former presiding judge could rely on judicial immunity, *id.* at *9, and that

3

the chief of police, the former chief of police, and the mayor could not rely on qualified immunity. *Id.* at *12.

On interlocutory appeal, the Eleventh Circuit reversed that holding. 907 F.3d at 1135. For the judges, the Circuit found that they are entitled to judicial immunity because all the alleged acts were judicial in nature and the motivation behind the acts is irrelevant to the immunity analysis. *Id.* at 1330–33. For the other individual defendants, the Circuit held that the *McCullough* complaint was devoid of non-conclusory allegations connecting the mayor or police chiefs to the alleged constitutional violations. *Id.* at 1332–35. Accordingly, the mayor and police chiefs were found to be entitled to qualified and state agent immunity. *Id.* at 1335.

The City attempted to participate in the appeal in *McCullough*, but its appeal was dismissed. *See McCullough II*, Order (Aug. 17, 2017) at 3, No. 17-11554. The City claimed a right to appeal because the claims against it were "both inextricably intertwined with and solely dependent upon the actions" of one of the Municipal Court judges. *McCullough II*, Appellants' Joint Suppl. Mem. Jurisdiction, No. 17-11554. The Circuit rejected this argument, stating that it was this Court's denial of immunity that entitled the appellants to interlocutory appeal and that the City could not "piggyback" on the other defendants' proper appeal. *See McCullough II*, Order (Aug. 17, 2017) at 2, No. 17-11554. Specifically, the Circuit held: (1) that the Court "left open the possibility the judge and the City were independently responsible for creating the policies at issue;" (2) that "the City's liability does not necessarily match the judge's;" and (3) that "the City's appeal is not inextricably intertwined with the judge's entitlement to immunity." *Id.* at 3.

Still, the City argues that the Circuit's decision in *McCullough II* precludes its liability to separate plaintiffs in a separate case. Specifically, the City relies on this Court's incorporation of the reasoning from *McCullough I* into its motion to dismiss opinion in this case to argue that all

4

the non-conclusory allegations in the *Carter* complaint are either judicial acts or insufficient to establish the City's liability. Mot. J. Pleadings 9–13, ECF No. 200.

Judicial acts by the Municipal Court, the argument goes, may not be attributed to the City because the City has no authority over the Municipal Court. *See* Mot. J. Pleadings 7, ECF No. 200; *see also Turquitt v. Jefferson Cty.*, 137 F.3d 1285, 1292 (11th Cir. 1998) ("[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control."). Municipal courts in Alabama are a part of Alabama's unified judicial system. *See* Ala. Const. of 1901, Art. VI, § 139(a) (stating that "the judicial power of the state shall be vested exclusively in a unified judicial system which shall consist of . . . such municipal courts as may be provided by law."); Ala. Code §12-1-2 (Same). The Supreme Court of Alabama is authorized to create procedural and administrative rules for municipal courts. Ala. Code § 12-2-19(a). State law grants municipal courts authority to impose probation on defendants and set the conditions for such probation. *See id.* § 12-14-13. And the Court of the Judiciary—a state court—is responsible for sanctioning a municipal court judge for misconduct or ethical violations. *See* Ala. Const. of 1901, Art. VI, §§ 156 & 157. Accordingly, some courts in Alabama have held at the summary judgment stage that the municipality did not have control over JCS's actions and therefore could not be held liable under § 1983, *see, e.g., Ray v. Judicial Corr. Servs.*, No. 2:12-cv-2819-RDP, 2017 WL 660842, at *12 (N.D. Ala. Feb. 17, 2017), a fact of which this Court was aware at the time of its opinion on the City's motion to dismiss. *Carter v. City of Montgomery*, No. 2:15-cv-555 (RCL), 2017 WL 957540, at *2 (M.D. Ala. Mar. 10, 2017).

But this case is not at the summary judgment phase and Mr. Carter has pleaded more in his complaint—a complaint unevaluated by the Eleventh Circuit—than judicial acts. Under Alabama law, the municipalities are responsible for "provid[ing] appropriate facilities and necessary

5

supportive personnel for the municipal court and may provide for probation services." *Id.* § 12-14-12. This includes the "power to contract with a private firm to aid in the collection of delinquent municipal court fines." *Wilkins v. Dan Haggerty & Assocs., Inc.*, 672 So.2d 507, 510 (Al. 1995). And here, Mr. Carter alleges that the City exercised its administrative authority under Alabama law to contract with JCS as part of a scheme to increase revenue at the expense of its residents' constitutional rights. *E.g.*, Second Am. & Restated Compl. ¶¶ 27, 29, 101, ECF No. 145. In its contract, the City granted JCS an "exclusive franchise" for the provision of probation services. *Id.* ¶¶ 27, 356. It allowed JCS officers to carry badges and refer to themselves as "probation officers." *Id.* ¶ 28. Furthermore, Mr. Carter alleges that the City directly participated in the scheme, "modify[ing] orders of incarceration outside of any formal judicial process" by:

> decreasing a person's jail time from what was announced in open court so that a person is released with a remaining balance owed; allowing a person's release without any hearing if the person or family members present money to the City clerk; and allowing City employees to reduce the time a person is ordered to be in jail based on labor performed in the jail without any judicial involvement.

*Id.* ¶ 66.

The City, rather than the Municipal Court, chose to use JCS, signing the contract that allowed for the allegedly unconstitutional payment system and policies taken by JCS. *Id.* ¶¶ 6, 17, 19, 27. This was an administrative act over which the City has control under Alabama law. The decision to use JCS was a city policy and practice. Perhaps, after discovery, the City will demonstrate that the use of JCS was out of its hands and that JCS's actions were truly dictated by the Municipal Court and its judges. But at the present stage of proceedings, Mr. Carter has plausibly alleged that the City's decision to contract with JCS and make it the exclusive operator of probation services within the municipality was the moving force behind the constitutional deprivations alleged. The City's motion for judgment on the pleadings will be **DENIED**.

## II. The City's Motion to Dismiss Counts 11 and 13 of Mr. Carter's Second Amended and Restated Complaint [ECF No. 148]

After the Court's ruling on the City's motion to dismiss, *see* Order, ECF No. 98, Mr. Carter asked for leave to file his second amended and restated complaint. Mot. Leave File Second Am. & Restated Compl., ECF No. 115. Mr. Carter sought to add causes of action for false imprisonment and money-had-and-received arising from the same facts against JCS, CHC Companies, Inc., and the City. *Id.* The Court granted Mr. Carter's motion for leave, Order, ECF No. 143, and the City filed a timely motion to dismiss the two new counts against it for false imprisonment (Count 13) and money-had-and-received (Count 11). *See* Mot. Dismiss, ECF No. 148. The Court addresses each in turn.

A motion to dismiss is appropriate when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a failure occurs when the complaint is so factually deficient that the plaintiff's claim for relief is not plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Though facts in a complaint need not be detailed, Rule 8 "demands more than an unadorned, the-defendant-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual statements as true when deciding a Rule 12(b)(6) motion to dismiss. *Id.* at 678. However, conclusory legal allegations devoid of any factual support do not enjoy the same presumption of truth. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This is not a high bar however, as plaintiffs need only plead facts sufficient to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 547.

### A. *The City is immune from liability for Mr. Carter's claim for false imprisonment.*

In Count 13 of the Second Amended and Restated Complaint, Mr. Carter asserts a claim against the City for false imprisonment. Specifically, Mr. Carter alleges that the City, through its

scheme with JCS, unlawfully deprived him of his personal liberty as a means of extorting payment. Second Am. & Restated Compl. ¶¶ 328–336, ECF No. 145. Because Mr. Carter's claim for false imprisonment is based on intentional action by the City, it must be dismissed.

Section 11-47-190 of the Alabama Code provides that a municipality is immune from tort liability "unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty." In other words, "[t]his statute limits a municipality's liability for the acts of its agents to those acts that are negligent, careless, or unskillful." *Ex parte City of Tuskegee*, 932 So.2d 895, 910 (Ala. 2005). The statute does not provide municipalities categorical immunity for false imprisonment claims. *See Franklin v. City of Huntsville*, 670 So.2d 848, 852 (Ala. 1995). But to state a claim for false imprisonment against a city, a plaintiff must allege conduct that could constitute neglect, carelessness or unskillfulness. *See City of Bayou La Batre v. Robinson*, 785 So.2d 1128, 1131 (Ala. 2000).

Here, Mr. Carter fails to meet that requirement. His false imprisonment allegations suggest intentionality on the City's part. He claims the City used arrests and jailings for extortion. Second Am. & Restated Compl. ¶ 336, ECF No. 145. According to Mr. Carter, this was a part of the City's policy and practice with JCS. *Id.* ¶¶ 328. This suggests that the City made deliberate choices and cannot reasonably be read to suggest neglect, carelessness, or unskillfulness. The City is immune from such a claim and Count 13 must therefore be dismissed.

    B.    *Mr. Carter fails to state a claim for money had and received.*

In Count 11 of the Second Amended and Restated Complaint, Mr. Carter asserts a claim against the City for money had and received. Mr. Carter alleges the City illegally charged extra fees when fines became past due. *Id.* ¶¶ 309–18.

"The cause of action for money had and received 'is based upon the theory that one person shall not be unjustly enriched at the expense of the other, and is equitable in nature." *Azalea City Motels, Inc. v. First Ala. Bank of Mobile*, 551 So.2d 967, 978 (Ala. 1989) (quoting *Christie v. Durden*, 88 So. 667, 668 (Ala. 1921)). An action for money had and received is "maintainable in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it because in justness and fairness it belongs to another." *Jewett v. Boihem*, 23 So.3d 658, 661 (Ala.2009) (internal quotation omitted). "It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which . . . belongs to the plaintiff." *Id.* (internal quotation omitted).

Here, Mr. Carter has not adequately alleged that the City actually holds the extra fees paid by probationers. *See Foshee*, 322 So.2d 715, 717 ("The essence of . . . money had and received is that facts can be proved which show that defendant holds money . . . ."). In Count 11, Mr. Carter discusses: (1) the doubling of city fines, Second Am. & Restated Compl. ¶ 310, ECF No. 145; (2) a warrant fee, *id.*; (3) a thirty percent surcharge, *id.*; and (4) additional fees paid to JCS, *id.* ¶ 315. Mr. Carter broadly alleges that "[t]he city unlawfully charged and *collected* these extra fees which were paid under duress to avoid arrest and jail." *Id.* ¶ 317, ECF No. 145.

But Mr. Carter's complaint lacks context for this assertion. For example, the complaint is relatively clear that the City did not collect or hold the "additional fees [paid] to JCS." *Id.* ¶ 315. Furthermore, Count 11 alludes on multiple occasions to "extra fees" collected by the Municipal Court. *Id.* ¶¶ 313, 315. As discussed in Part I, the Municipal Court is part of the State of Alabama's

9

Unified Judiciary, and there is no allegation that monies submitted to the Court were then disbursed to the City. The whole evaluation of the claim is only made more complicated by Mr. Carter's apparent use of "the City" and the "Municipal Court" interchangeably at times throughout the complaint. *See, e.g., id.* ¶ 53 (stating "the City's practice was to call [family members] up to the bench"). In sum, the complaint leaves the Court ignorant to which fees were collected by the City, as opposed to JCS and the Municipal Court, and more importantly which fees are actually held by the City or even benefitted the City in some way. Without further clarity, Mr. Carter's money had and received claim runs afoul of Rule 8 and *Iqbal/Twombly* and therefore must be dismissed.

### III. Conclusion

For the reasons stated herein, the City's Motion for Judgment on the Pleadings [ECF No. 200] will be **DENIED**, while the City's Motion to Dismiss Counts 11 and 13 [ECF No. 148] will be **GRANTED**. A separate order will issue this date.

Date: 3/29/19

_____
Royce C. Lamberth
United States District Court