UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| Aldaress Carter, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) Case No: 2:15-cv-555 (RCL) |
| THE CITY OF MONTGOMERY, ALABAMA, *et al.*, | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

The City of Montgomery (the "City") clearly does not want this case to move forward, at least with it as a party. At various times, it has asked for stays, moved to dismiss for failure to state a claim, and—even after the Court denied that motion—moved for judgment on the pleadings. And now, with the stay lifted and its motions largely denied, it appears its latest tactic is to attempt to gum up the process through recalcitrance in discovery. But this case is old and must start progressing toward trial or resolution. For the reasons stated herein, the Court will largely grant Mr. Carter's Second Motion to Compel [ECF No. 171], as amended in the Joint Status Report and Proposed Schedule [ECF No. 208].

In April 2017, Mr. Carter served his First Interrogatories and Requests for Production on the City. Pl.'s Second Mot. Compel Ex. A, ECF No. 171-1. In June of that year, the City served its responses to those requests, Pl.'s Second Mot. Compel Ex. C, ECF No. 171-3, but maintained that it would not participate in discovery until the Court resolved its then-pending motion to stay discovery. Pl.'s Second Mot. Compel Ex. E, ECF No. 171-5. Taking umbrage with that position, Mr. Carter filed a motion to compel production of the requested discovery. Mot. Compel, ECF

1

No. 127. However, the Court eventually granted the motion to stay the case pending resolution of an appeal in a similar case involving the City. Order, ECF No. 131. And Mr. Carter's first motion to compel was denied as moot. Order, ECF No. 138.

In June 2018, the stay was lifted, Order, ECF No. 142, and in July, counsel for Mr. Carter asked the City for substantive responses to his original discovery requests. Pl.'s Second Mot. Compel Ex. F, ECF No. 171-6. In September 2018, the City provided amended responses to Mr. Carter's First Interrogatories and Requests for Production. Pl.'s Second Mot. Compel Ex. J, ECF No. 210-1 (hereinafter, "RFP/Interrogatory Responses"). Still unsatisfied with the City's responses, Mr. Carter filed his Second Motion to Compel—the subject of this Order. *See* Pl.'s Second Mot. Compel, ECF No. 171.

But since the filing of Mr. Carter's motion, the case has narrowed slightly. The Court dismissed claims against the City for false imprisonment and money had and received—the only claims against the City with a six-year, rather than two-year, statute of limitations. Order, ECF No. 207. Accordingly, Mr. Carter has revised his document requests to the City reducing the time frame from six to two years. Joint Status Report and Proposed Schedule 3, ECF No. 208. Accordingly, the City submitted a supplemental response in opposition to Mr. Carter's motion. City's Suppl. Resp., ECF No. 211. The Court evaluates the present motion in light of this change.

Although Mr. Carter seeks to compel responses to twenty-one separate requests for production or interrogatories, *see* Second Mot. Compel ¶ 13, ECF No. 171, the Court begins by responding to two of the City's global objections.

First, the City argues that it need not produce municipal court files or related records because the "municipal court, though funded by the City, is part of the Unified Judicial System of the State of Alabama and the courts' files are not city documents." RFP/Interrogatory Responses

at 9, 11, 14, 15, 20, 22, 25, 27, 29, 36, 38, 52, 54, 57, 59, 61. Not so. Under Rule 34(a), a party must generally produce responsive documents within its "possession, custody, or control." Fed. R. Civ. P. 34(a). The Eleventh Circuit has "broadly construed 'control' for purposes of discovery as 'the legal right to obtain the documents requested upon demand.'" *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016) (quoting *SeaRock v. Stripling*, 736 F.2d 650, 653–54 (11th Cir. 1984)).

And a "legal right to obtain" does not require actual possession or legal control. *Id.* at 1201 n.6. For example, in *Sergeeva*, the Eleventh Circuit affirmed a district court's "determin[ation] that 'the legal right to obtain documents requested upon demand' may be established where affiliated corporate entities . . . have actually shared responsive information and documents in the normal course of their business dealings." *Id.* at 1201. In that case, a corporation could not avoid producing responsive documents simply by claiming that they belonged to a separate, albeit affiliated corporation. *Id.*

So too here. The City, who is responsible for "provid[ing] appropriate facilities and necessary supportive personnel for the municipal court," undoubtably shares the responsive information and documents in the normal course of performing its administrative functions. *See* Ala. Code § 12-14-12. After all, the City is responsible for housing the court and any records, as well as employing the court's supporting staff. Therefore, the City does not meet its discovery obligations simply by stating court files are not city documents. The City must make a good faith effort to obtain the court documents. *SeaRock*, 736 F.2d at 654. And to the extent that the City responded to a discovery request by claiming that the request seeks documents and information in possession of the municipal court and thus outside of its possession, custody, or control, Mr. Carter's motion is hereby **GRANTED**.

Second, the City argues that documents related to absent class members are irrelevant prior to class certification and would be overly burdensome to locate and produce. *See* City's Resp. 3–5, ECF No. 182. It asserts that at least of eleven of the requests presently before the Court "are *purely* related to potential claims of absent class members, and clearly should not be imposed on the City, either now or at all." *Id.* at 5. The Court rejects this notion.

For one, documents or information related to absent class members are not categorically irrelevant to Mr. Carter's claims. To impose municipal liability under § 1983, Mr. Carter must prove a government policy or custom on the part of the City. *See Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015). The treatment of other JCS probationers is undoubtedly relevant to showing that policy or custom. Of course, it also bears on the elements of class certification under Rule 23. (Indeed, this is part of the reason the Court thought it better to reserve on the issue of class certification until after completion of merits discovery.) But at bottom, Mr. Carter's attempt to hold the City liable under § 1983 makes this information relevant to his merits claim too. And the City may not refuse Mr. Carter's requests based on a blanket relevance objection.

Moreover, the City has not sufficiently demonstrated that Mr. Carter's requests are overly burdensome. The party resisting production bears the responsibility of establishing undue burden. *Coker v. Duke & Co., Inc.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998). "Generally, a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden." *Id.* Conclusory statements about the difficulty of complying with a discovery request or the expected expense are not enough. *Id.*; *see also Twin City Fire Ins. Co. v. Ford Motor Co.*, 124 F.R.D. 652 (D. Nev. 1989). Instead, "[t]he resisting party must make a particular and specific demonstration of fact." *Coker*, 177 F.R.D. at 686.

Here, the City has made no such showing. The City does attach affidavits to its supplemental response. City's Suppl. Resp. Ex. 1, ECF No. 211-1; City's Suppl. Resp. Ex. 3, ECF No. 211-3. But they fail to acknowledge the reduced scope of Mr. Carter's amended requests. Mr. Carter has reduced the time-frame of his requests from six to two years since the filing of his motion. Thus, the responsive material is theoretically one-third of that originally requested. Joint Status Report and Proposed Schedule 3, ECF No. 208. Because this change is unacknowledged by the City's affiants, the Court finds the City's arguments conclusory and largely speculative.

The Court is sensitive to the costs associated with discovery. But based on the correspondence between the parties submitted with Mr. Carter's motion, it appears that Mr. Carter's counsel is willing to make accommodations to the City to attempt to keep costs down, such as cross-referencing discovery received from JCS to limit the City's searches. *See* Pl.'s Second Mot. Compel Ex. M, ECF No. 171-13. At this time, the City has not met its burden to show burdensomeness and the Court **GRANTS** Mr. Carter's motion as to the requests related to absent class members. The Court agrees that the City is not obligated to create information to convenience the plaintiff, but the Court expects the City to collaborate with Mr. Carter on discovery and produce what it has or what it can legally obtain upon demand.

Having addressed the City's two major objections to Mr. Carter's requests, the Court turns to the remaining objections to requests specifically identified in the City's response and supplemental response. City's Resp. 3–5, ECF No. 182; City's Suppl. Resp. 3–12, ECF No. 211.

*Request 1.* In its first request, Mr. Carter asks the City to produce policies and practices pertaining to electronically stored information ("ESI"). *See* RFP/Interrogatory Responses at 2. Mr. Carter states that "[i]f these policies are unwritten, list by name, title, and department people who are responsible for the records relating to the claims in this case." *Id.* Although Mr. Carter

5

is unsatisfied that no policy has been produced, Pl.'s Second Mot. Compel 8, ECF No. 171-1, the City clarified that it does not have written policies but listed two people responsible for the records in this case. City's Resp. at 8, ECF No. 182. Accordingly, the City has complied with the request and the Court **DENIES AS MOOT** Mr. Carter's motion to compel as to Request 1.

*Request 4.* Request 4 is actually an interrogatory asking the City to list the "key custodians for the court, the police, the finance department and the jail." RFP/Interrogatory Responses at 8. It asks the City to describe "1) their roles within the organization; 2) what relevant ESI they may have; and 3) the most effective and efficient method to produce relevant ESI." *Id.* While most of the City's objections were dealt with above, the City also objects on the grounds that the interrogatory asks it to determine what is relevant. City's Resp. 8–9, ECF No. 182. This objection is well taken. "[A]n interrogatory must be specific in order that it need not be necessary for the party that is being examined to exercise discretion or judgment in determining what is intended to be covered by the interrogatory." *Webster Motor Car Co. v. Packard Motor Car Co.*, 16 F.R.D. 350, 351 (D.D.C. 1954). Mr. Carter knows the issues in the case and may not require the City to determine what is relevant. The City must list the key custodians, but Mr. Carter's motion is denied as to the rest of the interrogatory. Accordingly, Mr. Carter's motion is **GRANTED IN PART** and **DENIED IN PART** as to Request 4.

*Request 5.* Request 5 is also an interrogatory. It asks the City to "[l]ist and describe the principal form(s) of communication utilized by the key custodians for the court, the finance department, the police, and the jail." RFP/Interrogatory Responses at 9. It clarifies that "[t]his should include but not be limited to naming and describing the system(s) and/or device(s) used in these communications." *Id.* Although Mr. Carter is unsatisfied, the City maintains it gave a full response when it stated that communications "were principally through face-to-face

communications, emails and by telephone and/or cell phone." *Id.* at 10. The Court agrees and **DENIES AS MOOT** Mr. Carter's motion as to Request 5.

*Request 6.* Like Request 4, Request 6 asks the City exercise discretion or judgment in determining what is intended to be covered by the request. It asks the City to "[l]ist and describe all the reports utilized—or capable of being generated—within the court/finance department/jail that would contain *relevant* information regarding the claims in this case and produce a sample report of each." RFP/Interrogatory Responses at 11. This asks too much of the City. First, it asks not only for reports utilized, but reports *capable of being generated.* It is not the City's responsibility in discovery to make new documents to help Mr. Carter prove his case. Additionally, the City may not require the city to determine what is relevant. *See Webster Motor Car*, 16 F.R.D. at 351. Mr. Carter's motion is **DENIED** as to this request.

*Request 7.* Request 7 is an interrogatory that calls for too much discretion and judgment on the part of the City. It asks, "What are the primary sources of relevant ESI that will assist in the resolution of the claims and defenses in the case, and who is/are the best person(s) to advise and assist with collecting it?" RFP/Interrogatory Responses at 7. On its face, this request asks the city both to determine what ESI is relevant and what ESI will assist in the resolution of the claims and defenses in this case. Like Requests 4 and 6, this request is too unspecific. In his reply brief, Mr. Carter clarifies that in Request 7 he "seeks the sources of electronically stored information about persons assigned to JCS during 2009." Pl.'s Reply at 6, ECF No. 186. The Court **DENIES** Mr. Carter's motion as to this request, as written. But the request as modified in the reply is proper when adjusted to the relevant two-year time period and would need to be responded to should Mr. Carter revise his request.

7

*Request 9*. Request 9 is a request for production seeking "all contracts and any amendments thereto between The City of Montgomery and JCS," as well as "any correspondence, documents, minutes or other documents of the City concerning the negotiation, review and approval of those contracts." RFP/Interrogatory Responses at 14. The City claims it has produced everything responsive to this request. City's Resp. 10, ECF No. 182; *see also* City's Suppl. Resp. 4, ECF No. 211. Mr. Carter states he "will pursue the validity of that position with the City's deponent. Pl.'s Reply 6, ECF No. 186. Accordingly, as to this request, Mr. Carter's motion is **DENIED AS MOOT**.

*Request 13*. In Request 13, Mr. Carter seeks production of "any correspondence, emails or other documents showing communication between any personnel at Montgomery and JCS since JCS began working in Montgomery's municipal court in 2009." RFP/Interrogatory Reponses at 18–19. The City originally claimed that this request was "burdensome because the emails of JCS personnel are not fully known." City's Resp. 11, ECF No. 182. In its supplemental response, the City states that it will comply with the Request 13. City's Suppl. Resp. 5, ECF No. 211. This request goes directly to the City's involvement in the JCS probation operation. The Court **GRANTS** Mr. Carter's motion as to Request 13 and expects the City to make good on its representation as expeditiously as possible.

*Request 14*. Request 14 is an interrogatory asking for "the name, address and position with Montgomery of all personnel, including the magistrates, clerks and any other personnel who had responsibility with the operation of the municipal court since the date of the initial JCS contract to date." RFP/Interrogatory Responses at 20–21. The City provided a list of employees but the principal dispute with regards to this request is whether the City must provide addresses and phone numbers. The Court finds that information relevant so that Mr. Carter may subpoena potential

witnesses or otherwise investigate the case. Mr. Carter's motion to compel as to this interrogatory is **GRANTED**. However, because of the sensitivity of personal information such as addresses and phone numbers, such personal information may only be used in connection with this litigation and shall be placed under seal if filed with the Court.

*Request 16.* In Request 16, Mr. Carter seeks "any and all forms, including form probation orders, and other such documents provided to Montgomery by JCS." RFP/Interrogatory Responses at 24. The request goes on to list examples of forms, such as "Successful termination, Unsuccessful termination, Terminated modified, Order of modification, Warrant for arrest, Warrant dismissal, [] Petition of Revocation, Probation Orders, Notice to Show Cause, Delinquency reports, [and] Failure to Appear letters." *Id.* In its supplemental response, the City states that it "has provided all forms that were regularly used." City's Suppl. Resp. 5, ECF No. 211. Mr. Carter can examine the veracity of such a statement in a deposition. The Court **DENIES AS MOOT** Mr. Carter's motion as to this request.

*Request 17.* Request 17 seeks "copies of all Montgomery court files and documents concerning all people who were required to report to JCS at any time since JCS began working in Montgomery's municipal court in 2009." RFP/Interrogatory Responses at 26. The request has since been modified to include only documents from the two years preceding Mr. Carter's filing of this action. Joint Status Report and Proposed Schedule 3, ECF No. 208. For the reasons already expounded, the City's objections to producing court documents or documents relating to absent class members are overruled. Additionally, the City's burdensomeness arguments relating to this request are similarly unavailing. They are almost entirely speculative and conclusory. Furthermore, the arguments rely on Mr. Carter's representation from his class certification brief, estimating that 17,000 people fall within the putative class. *See* Suppl. Resp. 6, ECF No. 211; *see*

9

*also* Memo. Support Class Certification 1, ECF No. 117. But Mr. Carter's brief makes clear that the 17,000 number includes all individuals subjected to the JCS system from when it was first instituted in Montgomery in 2009 until 2014 when the City terminated its relationship with JCS, rather than the two-year period at issue under the revised requests. Memo. Support Class Certification 1, ECF No. 117. Presumably, the number of people now covered by Request 17 is significantly less than 17,000, and accordingly, the expense required to cull responsive documents is significantly reduced as well. This change is unaccounted for in the City's briefs and supporting affidavits. The City has not met its burden to show burdensomeness, and Mr. Carter's motion is **GRANTED** as to Request 17.

*Request 19.* In Request 19, Mr. Carter requests the production of "jail transcripts for people whose fines and fees were 'commuted' since JCS began working in Montgomery's municipal court in 2009." RFP/Interrogatory Responses at 30. The City objects, noting that the request "is not limited to those people who were assigned to JCS, which the Plaintiff purports to be the limit of its class definition." City's Suppl. Resp. 7, ECF No. 211. It argues that the request is overbroad in that it seeks information beyond that which is relevant. *Id.* at 7–8. The Court disagrees. In the context of this case, the "commuting" of fines means the conversion of unpaid fines into jail time. *See, e.g., See* Pl.'s Second Mot. Compel Ex. M, ECF No. 171-13. The Court finds this information plainly relevant to Mr. Carter's claims. Furthermore, Mr. Carter's counsel has offered to use the discovery it received from JCS to make it easier to identify the individuals with commuted sentences. *Id.* The Court **GRANTS** Mr. Carter's motion as to Request 19.

*Request 23.* Request 23 asks the City to "[p]roduce copies of all orders of modification where probation periods with JCS were extended, modified or reinstated concerning defendants who were required to report to JCS." RFP/Interrogatory Responses at 35. The City argues that

this request is irrelevant because Mr. Carter lacks standing to challenge the allegedly wrongful extension of probation periods beyond twenty-four months. City's Suppl. Resp. 8, ECF No. 211. But this point is disputed, and the responsive documents may in fact be relevant. *Compare* City's Opp'n Class Certification, ECF No. 160, *with* Pl.'s Reply to City's Opp'n Class Certification 11, ECF No. 173. The City's objection is overruled. Additionally, the City's burdensomeness objection is overruled for the same reasons articulated with regards to Request 17, *supra*. The Court **GRANTS** Mr. Carter's motion as to Request 23.

*Request 24.* Request 24 is an interrogatory asking the City to list all persons placed on probation with JCS. RFP/Interrogatory Responses at 35. The City argues not only that this request is overly burdensome and disproportionate, but also that Mr. Carter has access to this information through its prior discovery with JCS. City's Suppl. Resp. 8–9, ECF No. 211. First, the City has not met sufficiently shown that the request is unduly burdensome or disproportionate in light of the change to the scope of the requests. *Supra* pp. 9–10. To the City's second argument, it appears to the Court based on Mr. Carter's evidentiary submission that he seeks confirmation from the City's records that the information provided by JCS is correct. Pl.'s Second Mot. Compel Ex. M, ECF No. 171-13. This is a fair request. Moreover, Mr. Carter has offered to provide a spreadsheet with the information about JCS probationers in Montgomery garnered from the JCS discovery to assist in the confirmation process. Pl.'s Second Mot. Compel Ex. M, ECF No. 171-13. The Court **GRANTS** Mr. Carter's motion as to this request, and the Court is confident that the parties can work together to ease any burden on the City.

*Request 25a.* Request 25a seeks a list of all JCS probationers jailed after being placed on probation for either a probation violation, failure to obey court order or failure to appear. RFP/Interrogatory Responses at 37. The City first objects that "the information requested is

beyond the statue of limitations period in this case." City's Suppl. Resp. 9, ECF No. 211. But the City has since limited its requests to two years. Joint Status Report and Proposed Schedule 3, ECF No. 208. The City further objects that the interrogatory is overly burdensome because the municipal court clerks "do not generally use the code for jail that is available" in its system and "and there is no way to search for those who are jailed." City's Suppl. Resp. 9, ECF No. 211. Therefore, the City would have to undertake a manual review to create a list responsive to the request. *Id.* While this is attested to in Mr. Nixon's affidavit, Mr. Nixon makes no representations about how many people may fit the request in light of the change in time-frame. Nor does he estimate the number of hours it would take to do the review manually. The City states "a *substantial* manual review would be required" to answer the interrogatory, but without a more detailed affidavit, the Court finds this statement speculative and conclusory. The Court **GRANTS** Mr. Carter's motion as to Request 25a.

*Request 25b.* Request 25b is an interrogatory asking the City to list probationers whose probation period extended more than two years from their initial conviction date. RFP/Interrogatory Responses at 38–39. The City's arguments related to standing fail for the reasons articulated by the Court when addressing Request 23 and its burdensomeness arguments fail for the same reasons articulated when addressing Request 25a. The Court **GRANTS** Mr. Carter's motion as to Request 25b.

*Requests 25c, 25d, 25e, and 25f.* Request 25c asks for names of all probationers found to be indigent and placed on probation. RFP/Interrogatory Responses at 39. Request 25d asks for those placed on JCS probation even though they had paid fines and court costs. *Id.* Request 25e asks for those placed on JCS probation who had counsel appointed before being jailed. *Id.* And Request 25f asks for those placed on JCS probation who had fines or costs added to their JCS

probation balance from charges that predated the charge which resulted in the probation order. *Id.* The City objects to all of these as overly burdensome because there is no electronic search capable of answering the questions. City's Suppl. Resp. 10, ECF No. 211. At this time, that objection will be overruled for the reasons articulated by the Court when addressing the City's burdensomeness objections with regards to Request 25a. Regarding Request 25e, the City states that it cannot be answered at all with a file review "because, while it was the general practice of the court to provide access to counsel, that is not necessarily noted or reflected in the file." *Id.* This is attested to by Mr. Nixon in his affidavit, City's Suppl. Resp. Ex. 1 ¶ 11, ECF No. 211-1, and may be explored by Mr. Carter in deposition. The Court **GRANTS** Mr. Carter's motion as to Request 25c, 25d, and 25f, but **DENIES** Mr. Carter's motion as to 25e.

*Request 25g.* Request 25g is an interrogatory asking the City to list those probationers who had warrant fees added to their balance. RFP/Interrogatory Responses at 39. The Court agrees with the City that this request pertains primarily to Mr. Carter's now-dismissed money-had-and-received claim. *See* Order, ECF No. 207. Because there is little relevance to this request, the Court finds that the burden of the proposed discovery outweighs its likely benefit. The Court **DENIES** Mr. Carter's motion as to Request 25g.

*Request 27.* Request 27 asks for the "municipal ordinances or other authority upon which [the City] contend[s] the City of Montgomery was authorized to: 1) add warrant fees; 2) add court costs above those allowed by the state; 3) double fines for those who do not pay on time; or 4) add fees for the District Attorney." RFP/Interrogatory Responses at 41. Because the City states "[t]hat information was provided to Plaintiff on October 26, 2018," the motion is **DENIED AS MOOT** as to Request 27. City's Suppl. Resp. 11, ECF No. 211.

*Request 31.* In Request 31, Mr. Carter asks the City to produce all police department records and documents relating to individuals assigned to JCS probation. RFP/Interrogatory Responses at 46. The City argues that such a request is inappropriate because "the information is actually being sought as to damages." Class Suppl. Resp. 11, ECF No. 211. The Court disagrees. This information is relevant to demonstrating a policy or custom on the part of the City and may illuminate the scope, if any, of the City's participation in the alleged JCS probation operation. Furthermore, the City's statements claiming that this request is burdensome and disproportionate are conclusory and unsupported. The Court **GRANTS** Mr. Carter's motion as to Request 31.

*Request 33.* Request 33 is an interrogatory asking the City to "list those persons given community service or some other form of alternative sentence in lieu of fines at Montgomery." RFP/Interrogatory Responses at 51. The City again argues that the request is unduly burdensome because there is no electronic search that can be conducted to find the documents responsive to the request. City's Suppl. Resp. 12, ECF No. 211. Therefore, a cumbersome manual review would have to be undertaken. *Id.* But without any detailed evidentiary support taking into account the change in the scope of Mr. Carter's document requests, these arguments are no more than conclusory statements about the difficulty of complying with a discovery request. The City fails to meet its burden, and the Court **GRANTS** Mr. Carter's motion as to Request 33.

*Request 34.* In Request 34, Mr. Carter asks the City to "list those persons for whom warrants were issued following a Petition of Revocation by JCS." RFP/Interrogatory Responses at 53. The City argues that "the mere fact that a warrant was issued following a Petition for Revocation of JCS" does not necessarily mean that the warrant was issued in connection with the revocation petition. City's Suppl. Resp. 12, ECF No. 211. Therefore, the City states it would have to undertake a manual review to determine whether the revocation was the cause of the issuance

of the warrant. *Id.* This burdensomeness argument, however, is supported by mere speculation. Mr. Nixon, in his affidavit, states that jailing "*could* have been the result of cases never assigned to JCS or *could* be the result of events on the cases assigned to JCS that were in no way related to that assignment." City's Suppl. Resp. Ex. 1 ¶ 4, ECF No. 211-1. But neither Mr. Nixon nor the City make any representations about whether this is a common occurrence. Such speculation does not prove undue burden and Mr. Carter's motion is **GRANTED** as to Request 34.

*Request 36.* Request 36 asks the City to produce "copies of all agreements and documents that relate to the employment, compensation and retention of Branch Kloess as public defender for the City of Montgomery." RFP/Interrogatory Responses at 58. The City represents that it has produced "all contracts with Branch Kloess and has produced the schedules for the public defenders." City's Suppl. Resp. 12, ECF No. 12. The Court therefore **DENIES AS MOOT** Mr. Carter's motion as to this request.

*Request 37.* In Request 37, Mr. Carter asks for "all court and jail documents that contain information relating to Branch Kloess' activities as public defender for the City of Montgomery since August 3, 2013." RFP/Interrogatory Responses at 60. Specifically, Mr. Carter seeks, among other things, "case action summaries listing Kloess as attorney, all note/recommendations to the judge, the calendar showing the days he worked, and any and all case files/notes he wrote." *Id.* Mr. Carter's motion to compel response to Request 37 is **GRANTED** as to Mr. Kloess' calendars (if in the possession, custody, or control of the City), as well as any responsive information that was available to both the prosecution—the City—and the public defender in these cases.

* * * *

For the reasons explained herein, the Court **GRANTS IN PART** and **DENIES IN PART** Mr. Carter's Second Motion to Compel. The Court further hopes that the reasoning articulated in this order will assist the parties in resolving future discoveries without the need for judicial intervention.

**IT IS SO ORDERED.**

Date: 5/14/19

*Royce C. Lamberth*
Royce C. Lamberth
United States District Court