UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

**ALDARESS CARTER**, individually and on
behalf of a class of similarly situated persons,

    *Plaintiff,*

**v.**

**THE CITY OF MONTGOMERY**, et al.,

    *Defendants.*

Case No. **2:15-cv-555-RCL**

## <u>MEMORANDUM OPINION</u>

Between 2009–2014, the Montgomery Municipal Court routinely jailed traffic offenders for failing to pay fines without inquiring into their ability to pay. In carrying out that system, the Municipal Court deprived offenders of their due process and equal protection rights not to be incarcerated for their poverty. *See Bearden v. Georgia*, 461 U.S. 660, 672–73 (1983). During that period, the City of Montgomery contracted on behalf of itself and the Municipal Court with Judicial Correction Services, Inc., ("JCS") to supervise Municipal Court-ordered misdemeanor probation. The City also contracted with public defender Branch D. Kloess to serve as a public defender in the Municipal Court.

Before the Court is plaintiff Aldaress Carter's motion for class certification. ECF No. 306. Mr. Carter seeks to certify four classes in his action against the defendants, the City, JCS, and Mr. Kloess.

Today, the Court resolved a motion for class certification in a parallel case. *See McCullough v. City of Montgomery*, No. 2:15-cv-463 (M.D. Ala. May 21, 2021) ("*McCullough* slip op."). The disposition of the motion in *McCullough*, which the *McCullough* plaintiffs' briefed

1

jointly with Mr. Carter, largely resolves the motion here as well. In this opinion, therefore, the

Court relies on its analysis in *McCullough* and reserves in-depth analysis for the issues unique to

Mr. Carter's motion.

Upon consideration of the motions; briefs;[1] evidentiary submissions; all other papers of

record; and the arguments made, testimony offered, and evidence received over the course of a

ten-hour hearing, the Court will **DENY** the plaintiffs' motion for class certification.

## I.   BACKGROUND

### A.  Factual Background[2]

For a full factual background to this case, see *McCullough* slip. op. 3–11. The following

facts are uniquely relevant here:

#### 1.  Public Defenders

> Alabama requires municipalities that operate municipal courts to
> provide counsel to indigent defendants. Ala. Code § 12-14-9. The
> City purported to meet that obligation through a pair of contracts —
> one with Mr. Kloess and one with a small Montgomery law firm.
> See Second Am. Compl., Ex. 2 (ECF No. 145-2); Kloess Dep. 67:9–
> 14 (ECF No. 265-1). Each public defender worked in the Municipal
> Court every other day, Kloess Dep. 79:23–80:4, representing every
> defendant who had been jailed prior to his court appearance, *see id.*
> at 104:16–19. The City paid the defenders an hourly rate. *Id.* at 69:4–

---

[1] The plaintiffs' brief in support of class certification ("Pls.' Br.") (ECF No. 307), the City's brief in opposition to class certification ("City's Opp'n") (ECF No. 320), JCS's brief in opposition to class certification ("JCS's Opp'n") (ECF No. 322), Mr. Kloess's brief in opposition to class certification ("Kloess Opp'n") (ECF No. 325), the plaintiffs' reply brief ("Pls.' Reply") (ECF No. 348), the plaintiffs' supplemental brief ("Pls.' Supp. Br.") (ECF No. 388), the defendants' joint supplemental brief ("Defs.' Supp. Br.") (ECF No. 387), the plaintiffs' supplemental reply ("Pls.' Supp. Reply") (ECF No. 392), the defendants' joint supplemental reply ("Defs.' Supp. Reply") (ECF No. 393), the plaintiffs' notice of additional authority ("Pls.' Notice") (ECF No. 395), and the defendants' joint response to that notice ("Defs. Resp. Notice") (ECF No. 396) constitute the extensive briefing on class certification.

[2] In describing the background to this case, the Court quotes extensively from its summary judgment opinion. *See Carter v. City of Montgomery*, 473 F. Supp. 3d 1273 (M.D. Ala. 2020). For ease of reference, in this section the Court uses the following short forms to refer to the summary judgment record: Citations to "City Evid." refer to Evid. Submissions Supp. City's Mot. Summ. J. (ECF No. 253). Citations to "Carter Evid." refer to Evid. Submissions Supp. Pl.'s Opp'n to Mots. Summ. J. (ECF No. 278). Citations to "Carter MSJ Evid." refer to Evid. Submissions Supp. Pl.'s Partial Mots. Summ. J. (ECF No. 72). The Court cites to depositions and declarations without reference to the evidentiary compilation in which they appear; it references docket only in the first citation to a deposition or declaration.

6. It received invoices from the defenders every two weeks, listing the number of hours the defenders worked but not the number of clients or cases they handled. *Id.* at 72:19–23.

The defenders handled an enormous caseload. Over the course of 2012, Mr. Kloess handled 16,436 cases over 127 days in court. Parrish Decl. at ¶ 14 (ECF No. 278-1). Many defendants appeared for multiple cases, so Mr. Kloess represented fewer individuals than cases. *Id.*

Although many of Mr. Kloess's clients were poor, he does not provide evidence that he routinely asked the Municipal Court to consider their inability to pay fees. Mr. Kloess testified that he has requested indigency determinations for some clients, but he was unable to name a single client for whom he had requested such a hearing. Kloess Dep. 163:1–11. He does not remember ever filing a written motion for an indigency hearing. *Id.* at 171:18–21.

*Carter v. City of Montgomery*, 473 F. Supp. 3d 1273, 1290 (M.D. Ala. 2020).

### 2.  Mr. Carter

In May 2011, a Montgomery police officer arrested Mr. Carter on outstanding warrants for failure to appear in the Municipal Court on several traffic tickets. 2018 Carter Dep. 68:7–10 [(ECF No. 163-14)]. Mr. Carter spent a night in jail and then appeared in court. *Id.* at 70:21–22. He could not afford to pay his fines, so the judge offered him a choice between further incarceration and JCS probation. *Id.* at 72:1–2. Mr. Carter elected to go on probation with JCS. *Id.* at 73:14–15. The probation order required Mr. Carter to pay $140 per month. Carter MSJ Evid., Ex. 17 (ECF No. 73-17). Mr. Carter made his first monthly payment in full but was never again able to pay the full amount due in any month. 2018 Carter Dep. 118:9–12. Over nineteen months on probation with JCS, Mr. Carter made a total of $833 in payments. Pl.'s Reply to CHC's Opp'n to Mot. Class Certification, Ex. 3 at 10–11 (ECF No. 174-3). JCS allocated $460 of those payments to fines and kept the rest as probation fees. *Id.* During those nineteen months Mr. Carter attended sixty-six JCS appointments and missed fifty-seven. *Id.* at 8–10. Eventually his payments slowed and, in November 2012, he missed several meetings and did not make a payment. *See id.* at 8, 10.

In December 2012, JCS petitioned the Municipal Court to revoke Mr. Carter's probation for failure to make payments and attend meetings. Carter MSJ Evid., Ex. 10. JCS claims that it gave Mr. Carter notice of the revocation hearing, *see* Pl.'s Reply to CHC's

Opp'n to Mot. Class Certification, Ex. 3 at 2 (ECF No. 174-3); Mr. Carter claims he never received the notice, 2018 Carter Dep. 125:16–19. Regardless, Mr. Carter did not attend his revocation hearing. City Evid., Ex. 23. He claims that he believed he had completed his probation because a JCS employee told him "You're done Mr. Carter" when he came in to make a payment in late December 2012 or January 2013. *See* 2018 Carter Dep. 124:2–13. Because Mr. Carter did not appear, the Municipal Court revoked his probation and issued warrants for his arrest. City Evid., Ex. 23.

In January 2014, Mr. Carter was arrested during a traffic stop on ten warrants for failing to appear in court. 2018 Carter Dep. 126:4–6. Seven of the warrants were tied to tickets for which Mr. Carter had been sentenced to JCS probation. Nixon Decl., Ex 5 at 205 [(ECF No. 253-30]. Mr. Carter spent the weekend in jail and then appeared before Judge Hayes. *See id.* at 205–206.

At the revocation hearing, Mr. Kloess nominally represented Mr. Carter. On the day of the hearing, Mr. Kloess represented sixty-seven individuals over three and one-half hours. Kloess Dep. 133:16–18; Parrish Decl. Ex. C at 9 (ECF No. 278-4). And Mr. Kloess was not in the courtroom at all for Mr. Carter's hearing. Kloess Dep. 132:2–11. Mr. Carter alleges, however, that Mr. Kloess consulted with him briefly and asked him if he would "pay or stay." 2018 Carter Dep. 136:4:15. Mr. Carter told Mr. Kloess that he would pay. *Id.* at 136:17.

But Mr. Carter could not pay his fines at the revocation hearing. His girlfriend brought $120 — all but $20 of Mr. Carter's liquid assets — to the Municipal Court. *Id.* at 137:11–22; Carter Dep. 352:20–22 (Nov. 7, 2019) (ECF No. 262-3) ("2019 Carter Dep."). Judge Hayes rejected that proffered payment and sent Mr. Carter back to jail. *Id.* at 138:1–15. Judge Hayes never asked Mr. Carter why he had not paid his fines. 2019 Carter Dep. 373:3–7. If he had inquired, he would have learned that Mr. Carter could not afford to pay much: when he appeared before Judge Hayes, he netted $300 per week from his job. 2018 Carter Dep. 221:10–11.

Municipal Court paperwork indicates that Judge Hayes commuted to jail time the fines from tickets underlying the seven JCS warrants; he gave Mr. Carter additional time to pay the tickets underlying the other three warrants. Nixon Decl., Ex 5 at 204–05. Four days after his arrest (and one day after his commutation), Mr. Carter was released from jail when his mother borrowed enough money to pay his remaining fines. *Id.* at 206; 2018 Carter Dep. 138:22–23.

*Id.* at 1290–92

### B. Procedural History

#### 1. Early Proceedings

Mr. Carter's operative complaint alleges causes of action under § 1983 and state law. Second Am. Compl. (ECF No. 145). Through a motion for partial summary judgment and a motion for judgment on the pleadings, the Court narrowed the claims in Mr. Carter's case. *See* Order 15 (March. 29, 2019) (ECF No. 203) (dismissing claims for declaratory and injunctive relief); Order (March 29, 2019) (ECF No. 207) (dismissing claims against City for money had and received and false imprisonment).

Therefore, prior to the summary judgment proceedings, claims remained in Mr. Carter's complaint for violations of the Due Process and Equal Protection Clauses, the Fourth, Sixth, and Eighth Amendments, and his *Bearden* rights, and for false imprisonment and money had and received. *See Carter*, 473 F. Supp. 3d at 1293.

#### 2. Summary Judgment

The defendants moved for summary judgment. The Court granted in part and denied in part the City's and JCS's motions for summary judgment, granted CHC's motion for summary judgment, and denied Mr. Kloess's motion for summary judgment. *Id.* at 1309–10.

Accordingly, after summary judgment, only three claims remain live in this case:

- A claim against JCS, the City, and Mr. Kloess under § 1983 for violation of Mr. Carter's *Bearden* rights;

- A claim against the City and Mr. Kloess under § 1983 for violation of Mr. Carter's Sixth Amendment right to counsel; and

- A claim against JCS for false imprisonment.

### 3.  Class Certification Proceedings[3]

After summary judgment, the Court set a briefing schedule for class certification. Order (Aug. 14, 2020) (ECF No. 275). When Mr. Carter filed his motion, he also filed a declaration from John Rubens, whom he hired to help produce information about potential class members for his attorneys to review. Rubens Decl. (ECF No. 308-1)

The Court conducted a hearing on the motion for class certification—and on JCS's motion to reconsider (ECF Nos. 332)—and received evidence. *See* Hr'g Tr. (Dec. 16, 2020) (ECF No. 389); Hr'g Tr. (Dec. 17, 2020) (ECF No. 390).

Following the hearing, the Court denied the plaintiffs' motion for class certification, holding that the proposed classes could not be ascertained. Mem. Op. 2 (Dec. 23, 2020) (ECF No. 369). It also denied JCS's motion to reconsider. *Id.* Finally, the Court held that consolidation of this case with *McCullough* was not warranted. *Id*

### 4.  Interlocutory Appeal and Remand

Mr. Carter petitioned for review of the class certification decision under Rule 23(f). He argued that the Court erroneously held "JCS probationers who served less [than one day of] jail time before being released should have been excluded from the class[es] because they were 'uninjured,'" Notice of 23(f) Appeal 22–23 (ECF No. 373), and that the Court improperly concluded that the classes were not ascertainable. *Id.* at 23–34.

After Mr. Carter filed his petition, the Eleventh Circuit clarified the class ascertainability standard in *Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021). The next day, it granted the petition for interlocutory review, vacated the Court's opinion on class certification, and remanded

---

[3] The Court previously denied a motion for class certification without prejudice, determining that it should address class certification after summary judgment. Order (Mar. 29, 2019) (ECF No. 204).

the case to the Court for reconsideration in light of *Cherry*. Order, *Carter v. City of Montgomery*, No. 21-90002-H (11th Cir. Feb. 3, 2021).

The Court, accordingly, ordered supplemental briefing on how *Cherry* affects class certification. Order 1 (Feb. 3, 2021) (ECF No. 387). It also reaffirmed its order and memorandum opinion as to the motion for reconsideration. *Id.* at 1–2.

## II.   LEGAL STANDARDS

Class actions operate as an "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). The party seeking class certification bears the burden of proving that class certification is appropriate after rigorous analysis. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). Unless the proponents of a class action can show that all of Rule 23's requirements have been met, the Court must presume that the case should not be certified as a class action. *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016); Fed. R. Civ. P. 23.

Class certification often requires some examination of the merits of the underlying claims and defenses. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–52 (2011). While that examination should go only as far as required to decide whether the proponents of certification have met Rule 23's requirements, *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009), at the very least the proponents must produce enough evidence for a reasonable jury to make findings that would sustain their theory of the case, *see Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016) (discussing jury standard); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (requiring consistency between theory of liability and evidence); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 785–86 (9th Cir. 2021).

## A. Threshold Issues

Before a class can be certified, it must be "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quotation marks omitted). "A class is inadequately defined if it is defined through vague or subjective criteria. And without an adequate definition for a proposed class, a district court will be unable to ascertain who belongs in it." *Cherry*, 986 F.3d at 1302.

"A class is 'clearly ascertainable' if [a court is] certain that its membership is 'capable of being' determined. But membership can be capable of determination without being capable of convenient determination. Administrative feasibility is not an inherent aspect of ascertainability." *Id.* at 1303. Whether a class would be difficult to ascertain is relevant to whether a class action is a superior means of dispute resolution, but difficulty ascertaining class membership does not preclude certification. *Id.* at 1303–04.

Finally, as in all cases, the plaintiffs in a class action—class representatives and class members alike—must establish standing. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1274 (11th Cir. 2019). Thus, they must show (1) an injury-in-fact, (2) causation, and (3) redressability. *Id.* at 1273.

## B. Rule 23(a)

Before a class may be certified, the Court must find the four Rule 23(a) requirements are met:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The first factor, numerosity, requires the Court to determine whether joinder of all class members is a realistic alternative to a class action. While the proponents of class certification need not meet any specific numerical threshold to establish numerosity, a class of more than forty individuals is generally too large for joinder to be practicable. *See Vega*, 564 F.3d at 1266–67. The Court need not determine the precise size of the class to make a numerosity finding. *Id.* at 1267.

The second factor, commonality, requires the Court to determine whether at least one question of law or one question of fact is capable of classwide resolution. *See Dukes*, 564 U.S. at 350. The common question must be central to the litigation: resolving the question should determine the validity of the claims. *See id.* The existence of factual differences does not prevent a finding of commonality when common legal questions are central to the case. *See* 1 William B. Rubenstein, *Newberg on Class Actions* § 3:21 nn.1–2 (5th ed. 2011–2020) (collecting cases).

The third factor, typicality, requires the Court to determine whether the proposed class representatives are aligned with the class. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Representatives' claims must "share the same essential characteristics as the claims of the class at large." *Id.* at 1279 n.14 (quotation marks and emphasis omitted). But factual differences between claims will not defeat a typicality finding when the claims of a representative and the class members arise from a common practice and under a common legal theory. *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1351 (11th Cir. 2001); *see also Prado*, 221 F.3d at 1279 n.14. Nor will variations in the amount of damages between the representatives and other class members. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Finally, while defenses unique to a class representative may establish atypicality, those

defenses must be a major focus of the litigation. *See, e.g., Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006) (collecting cases); *see also* 1 *Newberg on Class Actions, supra* § 3:45.

The fourth factor, adequacy, requires the Court to determine whether the proposed class representatives have any fundamental conflicts of interest with the class and whether they are qualified to serve as representatives. *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). A representative has a fundamental conflict of interest with the class, for example, when some members of the class benefitted from the challenged conduct while others were harmed or when he has fundamentally different economic incentives from other members. *See id.* at 1189–90. And a representative is qualified if he has at least a little knowledge about the case. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966). Additionally, the Court must determine that the proposed class counsel have the requisite experience and commitment to serve the class. *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see also* Fed. R. Civ. P. 23(g).

## C. Rule 23(b)(3)

On top of meeting the requirements of Rule 23(a), the proponents of class certification must meet one of the provisions of Rule 23(b). Here, the relevant part is Rule 23(b)(3), which requires that:

> [T]he [C]ourt find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The predominance inquiry requires the Court to determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In making that determination, the Court first characterizes the elements of the claims and defenses as either individual or common questions. 2 *Newberg on Class Actions*, *supra*, § 4.50. "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods*, 577 U.S. at 453 (quoting *Newberg on Class Actions*); *see Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989). After characterizing the issues, the Court must weigh them to see which predominate. This weighing is not a counting exercise. Instead, it is a qualitative and "pragmatic assessment" of whether there are enough common issues to make classwide resolution of those issues appropriate. *See Cordoba*, 942 F.3d at 1274. Indeed, a case may present many individual questions and still qualify for certification. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). But "[w]here, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." *Id.* at 1255. Finally, individualized damages are less of a barrier to finding that common issues predominate than is individualized liability. *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd on other grounds*, 545 U.S. 546 (2005).

The superiority inquiry requires the Court to decide whether a class action is the best means to resolve the dispute between the parties. The rule provides four non-exclusive criteria to consider in making that decision. *See Amchem*, 521 U.S. at 616. First, the Court must consider whether class members should individually control their claims. Members have a stronger interest in controlling their claims when they are entitled to larger individual damages. *Id.* at 617. Second, the Court must consider whether other litigation is pending on the same controversy. If enough actions are pending, then a class action may not be superior to individual cases. 2 *Newberg on Class Actions*, *supra* § 4.70. Third, the Court must consider whether concentration of litigation in the forum is appropriate. When a court has already resolved several preliminary issues, concentrating the case before that court is generally appropriate. *Klay*, 382 F.3d at 1271. And fourth, the Court must consider whether a class action would pose greater manageability issues than other methods of resolving the dispute. When common issues predominate, a single case is usually easier to manage than multiple individual suits. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009). Manageability "will rarely, if ever, be in itself sufficient to prevent certification of a class." *Klay*, 382 F.3d at 1272.

### D. Rule 23(g)

Besides considering the adequacy of class counsel under Rule 23(a)(4), before appointing class counsel the Court must also consider the following:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## III.   ANALYSIS

Mr. Carter moved to certify four classes: (1) a City class, (2) a JCS *Bearden* subclass, (3) a Kloess subclass, and (4) a false-imprisonment class.

With respect to all the proposed classes, the proposed class counsel have adequate experience[4] and capacity to serve in that role and are able to fairly and adequately represent the interests of the class based on the factors set forth in Fed. R. Civ. P. 23(g)(1)(A) and other pertinent material of record.

The Court will address the other class-certification requirements for each class in turn.

### A. City Class

Mr. Carter seeks to certify a City class "consisting of all individuals the Montgomery Municipal Court placed on JCS-supervised probation, who (1) had debt commuted to jail time in a JCS-supervised case after JCS petitioned the court to revoke probation; and (2) served any of that jail time on or after August 3, 2013." Mot. Class Certification 1. That class definition matches the *Bearden* class definition in *McCullough* word-for-word, except that the City class period starts thirty-three days later. *Compare id.*, *with McCullough* Mot. Class Certification 1 (*McCullough* ECF No. 281).

---

[4] The Evans Law Firm, P.C. and its senior attorney G. Daniel Evans represent that that they have litigated many class actions as class counsel. Evans Decl. (ECF No. 308-10); *see also* Parrish Decl. (ECF No. 308-11). Public Justice and its senior attorney Leslie A. Bailey represent that they have litigated many cases as class counsel. Bailey Decl. ¶¶ 6–7, 10–12 (ECF No. 308-12). Terrell Marshall Law Group PLLC and its senior attorney Toby Marshall represents that that they have litigated many class actions as class counsel. Marshall Decl. ¶¶ 3–7 (ECF No. 308–13).

Because the classes are essentially identical, the Court's analysis denying certification of the *Bearden* class in *McCullough* largely suffices to deny certification of the City class here. *See McCullough* slip op. 20–37.

One issue, however, merit independent discussion. As it did with the proposed class representatives in *McCullough*, the City objects to Mr. Carter as an atypical class representative. In essence, the City argues that Mr. Carter's case is factually distinguishable from the other class members. But factual differences between class members and class representatives do not render the representatives atypical. *See Piazza*, 273 F.3d at 1351. The class members and Mr. Carter all allege the same *type* of harm, which is all that Rule 23 requires to show typicality.

For the reasons stated here and in the Court's analysis denying certification of the *Bearden* class in *McCullough*, the Court, with respect to the City class, finds that:

- The proposed class is ascertainable;

- The proposed class is too numerous to make joinder of class members practicable;

- There are issues of law and fact common to the class;

- Mr. Carter presents claims typical of the members of the class;

- Mr. Carter would be an adequate class representative;

- The Evans Law Firm, Public Justice, and Terrell Marshall Law Group PLLC would be adequate class counsel;

- Common questions do not predominate over individual questions;

- A class action is not superior to other forms of dispute resolution; and,

- Upon consideration of the factors enumerated in Rule 23(g)(1)(A) and other pertinent material of record, the Evans Law Firm, Public Justice, and Terrell

Marshall Law Group PLLC are able to fairly and adequately represent the interests

of the class.

*See* Fed. R. Civ. P. 23(a), (b)(3), (g). Therefore, because Mr. Carter did not meet his burden to

show that common issues predominate over individual issues or that a class action would be the

superior method of dispute resolution, certification of the City class is not warranted.

**B. JCS *Bearden* Subclass**

Mr. Carter seeks to certify a JCS *Bearden* subclass "consisting of all individuals in the City

Class who served any of their post-commutation jail time on or after September 11, 2013." Mot.

Class Certification 1. That class definition matches the *Bearden* class definition in *McCullough*

word-for-word, except that the City class period starts seventy-two days later. *Compare id.*, *with*

*McCullough* Mot. Class Certification 1 (*McCullough* ECF No. 281).

Because the classes are essentially identical, the Court's analysis denying certification of

the *Bearden* class in *McCullough* and its analysis denying certification of the City class here suffice

to deny certification of the JCS *Bearden* subclass. *See McCullough* slip op. 20–37; *supra* Part

III.A.

For the reasons stated here and in the Court's analysis denying certification of the *Bearden*

class in *McCullough*, the Court, with respect to the JCS *Bearden* subclass, finds that:

- The proposed class is ascertainable;

- The proposed class is too numerous to make joinder of class members practicable;

- There are issues of law and fact common to the class;

- Mr. Carter presents claims typical of the members of the class;

- Mr. Carter would be an adequate class representative;

- The Evans Law Firm, Public Justice, and Terrell Marshall Law Group PLLC would be adequate class counsel;

- Common questions do not predominate over individual questions;

- A class action is not superior to other forms of dispute resolution; and,

- Upon consideration of the factors enumerated in Rule 23(g)(1)(A) and other pertinent material of record, the Evans Law Firm, Public Justice, and Terrell Marshall Law Group PLLC are able to fairly and adequately represent the interests of the class.

*See* Fed. R. Civ. P. 23(a), (b)(3), (g). Therefore, because Mr. Carter did not meet his burden to show that common issues predominate over individual issues or that a class action would be the superior method of dispute resolution, certification of the JCS *Bearden* subclass is not warranted.

### C. Kloess Subclass

Mr. Carter seeks to certify a Kloess subclass "consisting of all individuals in the City Class whose debt was commuted to jail time on a date when Branch Kloess was the public defender assigned to the jail docket or for whom Benchmark court records or other documents indicate the individuals were represented by Branch Kloess for the commutation." Mot. Class Certification 2–3.

In the Eleventh Circuit, the failure of the overarching City class does not by itself prevent certification of the Kloess subclass. *See* Klay, 382 F.3d at 1261–62; Rubenstein, *supra* § 7.29 n.1. But as no overarching class can be certified, the Kloess subclass must independently satisfy the Rule 23 requirements.

## 1. Threshold Issues

### (i) Ascertainability

The Court must first determine whether the *Bearden* class is "adequately defined and clearly ascertainable." *Little*, 691 F.3d at 1304 (11th Cir. 2012). That is, the Court must assure itself that the class is not "defined through vague or subjective criteria" and that the class membership is "'capable of being' determined." *Cherry*, 986 F.3d at 1302–03.

Here, the Kloess subclass criteria are not vague and are facially objective. Each criterion asks whether certain historical facts are true of an individual: (1) whether he had debt commuted to jail time and (2) whether (a) Mr. Kloess was the public defender assigned to the jail docket that day or (b) records indicate that Mr. Kloess represented the individual in commutation proceedings. *See* Mot. Class Certification 1–2. While a jury may ultimately need to establish the relevant historical facts, class membership can be determined.

Therefore, the proposed Kloess subclass meets the *Cherry* ascertainability standard.

### (ii) Improper Pleading

Mr. Kloess argues that Mr. Carter did not properly plead class allegations against him. That argument presents a close question. On one hand, Mr. Carter adequately pleaded Sixth Amendment and *Bearden* claims against Mr. Kloess. *See Carter*, 473 F. Supp. 3d at 1300. And Mr. Carter alleged that Mr. Kloess engaged in a systemic practice of not asserting his clients' *Bearden* rights. 2d Am. Compl. ¶¶ 7, 144. On the other hand, the Court denied Mr. Carter leave to amend his complaint to expressly allege class claims against Mr. Kloess. *See* Mem. Op. 3–7 (Dec. 20, 2019) (ECF No. 246); Order (Dec. 20, 2019) (ECF No. 247); *see also* Pls. Mot. for Leave to File 3d Am. Compl. (ECF No. 231).

Ultimately, the Court does not need to resolve that question, because it cannot certify a Kloess subclass in any case. Therefore, it reaches no decision on whether Mr. Carter's complaint properly pleaded class claims against Mr. Kloess.

## 2. Rule 23(a)

### (i) Numerosity

At least fifty members constitute the Kloess subclass.[5] Rubens Decl. ¶ 29. Joining that fifty plaintiffs borders on practicability. But a fact-intensive trial—like this cause of action would demand—would be unmanageable with fifty plaintiffs. *See Vega*, 564 F.3d at 1266–67. Therefore, the class is too numerous to be practicably joined.

### (ii) Commonality

Whether and when the City knew about the actions of Mr. Kloess is a question common to every Sixth Amendment claim against the City. The question is all-or-nothing. If the City lacked knowledge, none of the claims can proceed. If the City had knowledge, all the claims surmount a key hurdle. That one issue satisfies commonality for the Kloess subclass's claims against the City. *See Dukes*, 564 U.S. at 350.

Whether Mr. Kloess is a state actor for purposes of § 1983 is a question common to every Sixth Amendment claim against Mr. Kloess. That question too is all-or-nothing. If Mr. Kloess was not a state actor, none of the claims can proceed. If he was, all the claims surmount a key hurdle. That one issue satisfies commonality for the Kloess subclass's claims against Mr. Kloess. *See id.*

---

[5] Mr. Kloess contests the accuracy of those records. Kloess Br. 26. At minimum, however, Mr. Carter has presented enough evidence to present a contested question of fact on the number of individuals who meet the class criteria. *See Tyson Foods*, 577 U.S. at 459.

*(iii) Typicality*

Typicality requires that the class representative and class members proceed under a common legal theory. *Piazza*, 273 F.3d at 1351 (11th Cir. 2001). Here, Mr. Carter and the class members argue that Mr. Kloess violated their Sixth Amendment right to counsel in different ways: the class asserts ineffective assistance of counsel, while Mr. Carter asserts total deprivation of counsel. For that reason, Mr. Carter's claims are not typical of the class.

Mr. Kloess was absent from the courtroom during Mr. Carter's commutation hearing. Kloess Dep. 132:2–11. His absence totally denied Mr. Carter counsel at a critical stage of a criminal proceeding. *See Golden v. Newsome*, 755 F.2d 1478, 1483 (11th Cir. 1985) (citing *United States v. Cronic*, 466 U.S. 648, 659 (1984)). That failure was presumptively prejudicial. *See id.*; *see also Strickland v. Washington*, 466 U.S. 668, 692 (1984) ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").

In contrast, the record does not contain evidence that Mr. Kloess was out of the courtroom for the hearings of all the other class members. Their claims must rest on allegations that Mr. Kloess systemically failed to seek determinations of indigency or that he was too overwhelmed to provide constitutionally adequate representation. *See* Pl.'s Br. 62–63.

The class and Mr. Carter thus assert fundamentally different injuries. The alleged injury to the class stems from Mr. Kloess's failure to provide constitutionally adequate representation while he was in the courtroom with his clients; the injury to Mr. Carter stems from Mr. Kloess's failure to attend Mr. Carter's commutation hearing. The class claims are not fairly encompassed within Mr. Carter's claim. *See, e.g.*, *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569–70 (11th Cir. 1992) (holding that class representatives who allege different types of disparate

treatment claims to class are atypical). That Mr. Carter and the other class members would need to introduce substantially different evidence to support their claims only underscores that point.

Unlike mere factual differences surrounding an injury, differences in types of injury or legal theories prevent courts from finding that a named plaintiff is typical. Because Mr. Carter suffered a different injury from the rest of the class, he is not a typical class representative. *See Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("The complaining party must also show that he is within the class of persons who will be concretely affected. Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.").

*(iv) Adequacy*

Mr. Carter would be an adequate class representative—if, of course, his claims encompassed the class claims.

Mr. Carter would be inadequate only if he had a conflict of interest with the class. The legal differences between his injury and the class's injury are not antagonistic to each other. While the claims are distinct, advancing one claim does not defeat the other. Thus, Mr. Carter's differences with the class would not rise to the level of a conflict of interest. *See Valley Drug*, 350 F.3d at 1189.

The proposed representative and counsel are adequate.

**3. Rule 23(b)(3)**

As the Mr. Carter has not satisfied the Rule 23(a) criteria, no Rule 23(b)(3) analysis is required.

\* \* \*

For the reasons stated here, the Court, with respect to the Kloess subclass, finds that:

- The proposed class is ascertainable;

- The proposed class is too numerous to make joinder of class members practicable;

- There are issues of law and fact common to the class;

- Mr. Carter does not present claims typical of the members of the class;

- Mr. Carter would be an adequate class representative;

- The Evans Law Firm, Public Justice, and Terrell Marshall Law Group PLLC would be adequate class counsel; and,

- Upon consideration of the factors enumerated in Rule 23(g)(1)(A) and other pertinent material of record, the Evans Law Firm, Public Justice, and Terrell Marshall Law Group PLLC are able to fairly and adequately represent the interests of the class.

*See* Fed. R. Civ. P. 23(a), (b)(3), (g). Therefore, because Mr. Carter did not meet his burden to show that his claims are typical of the class, certification of the Kloess subclass is not warranted.

**D. False-Imprisonment Class**

Mr. Carter seeks to certify a false-imprisonment class "consisting of all individuals the Montgomery Municipal Court placed on JCS-supervised probation, who (1) had debt commuted to jail time in a JCS-supervised case after JCS petitioned the court to revoke probation; and (2) served any of that jail time on or after September 11, 2009." Mot. Class Certification 2. That class definition matches the false-imprisonment class definition in *McCullough* word-for-word, except that the City class period starts seventy-two days later. *Compare id.*, *with McCullough* Mot. Class Certification 1 (*McCullough* ECF No. 281).

Because the classes are essentially identical, the Court's analysis denying certification of the false-imprisonment class in *McCullough* suffices to deny certification of the false-imprisonment class here. *See McCullough* slip op. 37–44.

For the reasons stated here and in the Court's analysis denying certification of the false-imprisonment class in *McCullough*, the Court, with respect to the false-imprisonment class, finds that:

- The proposed class is ascertainable;

- The proposed class is too numerous to make joinder of class members practicable;

- There are issues of law and fact common to the class;

- Mr. Carter presents claims typical of the members of the class;

- Mr. Carter would be an adequate class representative;

- The Evans Law Firm, Public Justice, and Terrell Marshall Law Group PLLC would be adequate class counsel;

- Common questions do not predominate over individual questions;

- A class action is not superior to other forms of dispute resolution; and,

- Upon consideration of the factors enumerated in Rule 23(g)(1)(A) and other pertinent material of record, the Evans Law Firm, Public Justice, and Terrell Marshall Law Group PLLC are able to fairly and adequately represent the interests of the class.

*See* Fed. R. Civ. P. 23(a), (b)(3), (g). Therefore, because Mr. Carter did not meet his burden to show that common issues predominate over individual issues or that a class action would be the superior method of dispute resolution, certification of the false imprisonment class is not warranted.

## IV.   CONCLUSION

Based on the foregoing, the Court will **DENY** the plaintiffs' motion for class certification.

A separate order accompanies this memorandum opinion.

Date: _____ 5/21/21 _____

Royce C. Lamberth
United States District Judge